## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PAUL SHIMMEL, an incapacitated Person, by his parent and duly appointed Permanent plenary guardian of the person and Estate, BEATRICE SHIMMEL, ) ) ) ) | Case No. 3:18-cv-123- KG |
| ) | The Honorable Kim R. Gibson |
| Plaintiffs, ) ) | **Electronic Filing** |
| v. ) ) | JURY TRIAL DEMANDED |
| ) | |
| NAVISTAR, INC., a foreign corporation, RUSH TRUCK CENTERS OF VIRGINIA, INC., a foreign corporation, RUSH TRUCK LEASING, INC., a foreign corporation, EXPRESS LIGHT TRUCKING, INC., a foreign corporation, WEI JANG, a non-resident individual, and SEALAND FOODS, INC., a foreign corporation, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**DEFENDANTS RUSH TRUCK CENTERS OF VIRGINIA, INC. AND RUSH TRUCK LEASING, INC.'S MOTION TO DIMSISS PLAINTIFFS' AMENDED COMPLAINT**

NOW COME Defendants Rush Truck Centers of Virginia, Inc. and Rush Truck Leasing, Inc. ("Rush"), by and through their undersigned attorneys, and file this Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiffs' claims against them with prejudice. In support thereof, Rush states as follows and, in addition, refers to and incorporates the Memorandum of Law in Support, filed herewith:

1.     On June 11, 2018, Plaintiffs filed a three (3) count Complaint, with two counts asserted against Rush: one count for strict liability and one count for product negligence. [ECF No. 1]

2.     After being granted leave to do so, Plaintiffs filed an Amended Complaint on August 20, 2019.  The Amended Complaint is substantially the same as the original Complaint,

but differs in that Plaintiffs added "Sealand Foods, Inc." as a defendant and asserted a negligence claim against that party. [ECF No. 46]

3. It is alleged that defendant Jiang was operating a truck, in the course of his employment with defendants Express Light and/or Sealand Foods, when he was unable to avoid hitting the rear of another vehicle on the roadway. Attempting to avoid involvement in any collision with the vehicle, the Plaintiff John Paul Shimmel, while riding on a motorcycle, "fell to the roadway and slid into the guardrail along the side of the road." [ECF No. 46, ¶ 10]

4. Plaintiffs claim *inter alia* that the truck was defective in its design, manufacture, production, and informational system for not having "autonomous crash avoidance systems to minimize the risk and/or severity of foreseeable frontal collisions." [ECF No. 46, ¶ 16(c)]

5. Defendant, Navistar, manufactured the subject truck, and sold it to Rush, who **does not manufacture** over-the-road trucks or any of the component parts. Rather, Rush is described by the Plaintiffs as a **service retailer/lessor**. [ECF No. 46, ¶ 3] Defendant Express Light leased the truck from Rush. [ECF No. 46, ¶ 4]

6. Plaintiffs' claims against Rush must be dismissed pursuant to Rule 12(b)(6) because Rush did not manufacture or design this truck, and there is no legally cognizable duty to "market," "equip," or "provide" information to consumers.

## I.     RUSH'S MOTION TO DISMISS IS PROPERLY BEFORE THE COURT FOR CONSIDERATION

7. Rush filed an Answer and Affirmative Defenses to Plaintiffs' original Complaint. [ECF No. 12]

8. The purpose of Rule 12(g)(2), referred to as the "consolidation rule," is "to eliminate unnecessary delay at the pleading stage" by encouraging "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense"

2

simultaneously rather than "interposing these defenses and objections in piecemeal fashion." *Leyse v. Bank of America National Association*, 804 F.3d 316, 320 (3d Cir. 2015).

9.      Plaintiffs' Amended Complaint supercedes the originally filed Complaint. *See Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002).

10.     The Third Circuit held in *Leyse* as follows:

> A district court's decision to consider a successive Rule 12(b)(6) motion to dismiss is usually harmless, even if it technically violates Rule 12(g)(2). So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits.

*Leyse, supra*, at 321-22.

11.     To the extent Plaintiffs argue that Rush waived its challenges to the sufficiency of the claims asserted in the Amended Complaint for not filing a motion to dismiss to the original Complaint, the Court's rationale in *Leyse, supra*, is properly applied here.

12.     It would serve no purpose to require Rush to file an answer to the Amended Complaint and subsequently file a motion for judgment on the pleadings or motion for summary judgment.

## II.     <u>MOTION TO DISMISS PLAINTIFFS' STRICT LIABILITY CLAIM</u>

13.     In order to establish a prima facie warning, design or manufacturing defect claim against a seller under Pennsylvania law, which incorporates the Restatement (Second) of Torts, a plaintiff must show (1) the product was defective, (2) the defect existed when the product left the seller's hands, and (3) that the defect caused the plaintiff's harm. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014).

14.     A plaintiff may prove a "defective condition" exists by showing either "(1) the danger is unknowable and unacceptable to the average or ordinary consumer" (the "consumer expectations standard"), or "(2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions" (the "risk-utility standard"). *Id.* at 335, 387, 389.

15.     The "defect" claimed by the Plaintiffs is the absence of forward collision warning system and/or autonomous braking system on the subject truck.

16.     Plaintiffs assert three (3) theories against Rush in their strict liability claim:

    d.    failing to market this product with standardized forward collision warning system and/or autonomous braking system (such as the Bendix Wingman Advanced);

    e.    failing to equip this vehicle as a leased product with a forward collision warning system or an autonomous braking system (such as the Bendix Wingman Advanced);

    f.    failing to provide necessary information and/or warnings so that purchasers or lessees would have sufficient notice of the safety importance of available forward collision warnings systems and/or autonomous braking systems that were only supplied as optional equipment;

[ECF No. 46, ¶ 16]

17.     Even though Plaintiffs couch these three (3) claims as "strict liability," the only claimed manufacturer of the truck is Navistar. Therefore, Rush cannot be liable under a product liability theory as all claims against it are veiled "negligent marketing" claims.

18.     As is discussed further below, and in the accompanying Memorandum of Law in Support, there is no duty recognized by the law for a distributor, and in this case a lessor, such as Rush, to market to customers all options for a product. Stated otherwise, there is no recognized claim for "negligent marketing" under Pennsylvania law.

19.     While a lack of proper safety devices can constitute a defective design which may subject the **manufacturer** to liability, the theory fails against a distributor, i.e., lessor, who did not design or manufacture the product. *See Morello, supra, citing Heckman v. Federal Press Co.*, 587 F.2d 612, 616 (3d Cir. 1978).

20.     To the extent Plaintiffs' allegation that Rush failed to "equip" the truck with safety components may be interpreted as a claim for failure to retrofit, the law is clear that a failure to recall or retrofit a product after its sale could not be the basis for products liability claim under Pennsylvania law. *See Talarico v. Skyjack, Inc.*, 191 F. Supp. 3d 394 (M.D. Pa. 2016), citing <u>Lynch v. McStome & Lincoln Plaza Associates</u>, 548 A.2d 1276, 1281 (Pa. Super. 1988).

21.     Plaintiffs' strict liability claims set forth in Count One of their Amended Complaint against Rush are properly dismissed pursuant to Rule 12(b)(6) for failure to state any legally recognized cause of action.

### III.     MOTION TO DISMISS PLAINTIFFS' NEGLIGENCE CLAIM

22.     To prevail in a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question and actual loss or damage. *See Phillips v. Cricket Lighters,* 841 A.2d 1000, 1008 (Pa. 2003).

23.     Whether a defendant owes a duty to a plaintiff is a question of law. *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir.1993).

24.     Plaintiffs' negligence claims against Rush are as follows:

> f.     Defendant Rush made careless corporate business decisions to minimize expenses by failing to purchase a necessary and reasonable collision avoidance system that was offered by defendant Navistar as an option on "the truck";

g.     Defendant Rush careless *(sic)* failed to equip "the truck" with reasonable, appropriate, necessary and technologically available safety features and systems such as those described herein so as not to subject others to foreseeable harm and injury;

[ECF No. 46, ¶ 19]

25.     A fair reading of paragraph 19(f) of the Amended Complaint is another attempt to conceal a claim for negligent marketing, a theory that has been affirmatively rejected by Courts in Pennsylvania.

26.     There is no duty for a truck lessor, such as Rush, to offer and/or market to customers all available or conceivable safety features on trucks. The law in this regard is clear – there is no cause of action in Pennsylvania for failure to market or negligent marketing. *See Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745 (W.D. Pa. 2011).

27.     As stated previously herein, there is no duty to recall or retrofit a product, so Plaintiffs' claim for a failure to equip must also fail.

28.     Therefore, Plaintiffs' claim of negligence against Rush must also be dismissed pursuant to Rule 12(b)(6) for failure to state any cause of action.

## IV.     CONCLUSION

29.     The terminology used in Plaintiffs' Amended Complaint can only be described a creative attempt to re-word claims and theories that have all been rejected in previous cases.

WHEREFORE, Defendants Rush Truck Centers of Virginia, Inc. and Rush Truck Leasing, Inc. respectfully request this Honorable Court to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6), with prejudice.

Respectfully submitted,

Pietragallo Gordon Alfano Bosick & Raspanti, LLP

By:    /s/ James F. Marrion
          P. Brennan Hart, Esquire
          PA ID #18123
          James F. Marrion, Esquire
          PA ID #85181
          One Oxford Centre
          The Thirty-Eighth Floor
          Pittsburgh, PA  15219
          (412) 263-2000
          ***Attorneys for Defendants,***
          ***RUSH TRUCK CENTERS OF VIRGINIA, INC.***
          ***and RUSH TRUCK LEASING, INC.***

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN PAUL SHIMMEL, an incapacitated Person, by his parent and duly appointed Permanent plenary guardian of the person and Estate, BEATRICE SHIMMEL, )<br><br>Plaintiffs, )<br><br>v. )<br><br>NAVISTAR, INC., a foreign corporation, RUSH TRUCK CENTERS OF VIRGINIA, INC., a foreign corporation, RUSH TRUCK LEASING, INC., a foreign corporation, EXPRESS LIGHT TRUCKING, INC., a foreign corporation, WEI JANG, a non-resident individual, and SEALAND FOODS, INC., a foreign corporation, )<br><br>Defendants. ) | Case No. 3:18-cv-123- KG<br><br>The Honorable Kim R. Gibson<br><br>**Electronic Filing**<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS RUSH TRUCK CENTERS OF VIRGINIA, INC. AND RUSH TRUCK
LEASING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DIMSISS PLAINTIFFS' AMENDED COMPLAINT**

NOW COME Defendants Rush Truck Centers of Virginia, Inc. and Rush Truck Leasing, Inc. ("Rush"), by and through their undersigned attorneys, with the following Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiffs' claims against them with prejudice.

I.    **Introduction**

On September 8, 2017, Plaintiff John Paul Shimmel was operating a motorcycle along SR 322 in Clearfield County, Pennsylvania and traveling in an easterly direction. At the same time, Defendant Wei Jiang (hereinafter referred to as "Jiang") was operating a 2016 International 4000 Series 4300 medium-duty truck [VIN 1HTMMMMN5GH433041] (hereinafter referred to as "the

8

truck") manufactured and designed by Defendant Navistar, Inc. (hereinafter referred to as "Navistar"). Jiang was traveling in a westerly direction. Jiang's truck struck the rear of another vehicle and the truck entered into the easterly lane of SR 322. In an effort to avoid colliding with the truck, Plaintiff Shimmel took emergent action, which caused him to fall to the roadway.

At the time of the incident, Jiang was in the course and scope of his employment with Defendant Express Light Truck, Inc. (hereinafter referred to as "Express Light") and/or Defendant Sealand Foods, Inc. (hereinafter referred to as "Sealand Foods").

Rush is a lessor of medium and heavy-duty trucks. Rush purchased the truck from Navistar and leased it to Express Light.[1] Rush did not design, manufacture, or assemble the truck. Navistar, not Rush, "markets, sells and supplies its products to consumers in the Commonwealth of Pennsylvania."

## II.   **Background**

Plaintiffs filed their original Complaint on June 11, 2018 [ECF No. 1] and filed an Amended Complaint on August 20, 2019. [ECF No. 46] It is alleged that the truck was defective by design and manufacture for its failure to have "component parts and features to reduce the risk of frontal collisions by way of design and installation of an appropriate driver assistance system to minimize the risk of severity of foreseeable frontal collisions." Specifically, Plaintiffs claim that the truck was defective for not having a forward collision warning system or an autonomous braking system (such as Bendix Wingman Advanced).

As to Rush, Plaintiffs asserted two (2) claims: strict liability and product negligence. It is alleged that Rush is strictly liability for:

---

[1] While there has been extensive written discovery, document production, and discovery depositions during the pendency of this case, for the purposes of the instant Motion, matters outside of the Amended Complaint are not proper for consideration. This is purely a matter of law for the Court and submission or consideration of discovery materials, including deposition testimony, would be extraneous to this Motion.

- **failing to market** this product with standardized forward collision warning system and/or autonomous braking system (such as the Bendix Wingman Advanced);

- **failing to equip** this vehicle as a leased product with a forward collision warning system or an autonomous braking system (such as the Bendix Wingman Advanced);

- **failing to provide necessary information and/or warnings** so that purchasers or lessees would have sufficient notice of the safety importance of available forward collision warnings systems and/or autonomous braking systems that were only supplied as optional equipment;

[ECF No. 46, ¶ 16, emphasis added]. In the product negligence count, it is alleged as follows:

- Defendant Rush made careless corporate business decisions to minimize expenses by **failing to purchase** a necessary and reasonable collision avoidance system that was offered by defendant Navistar as an option on "the truck";

- Defendant Rush careless *(sic)* **failed to equip** "the truck" with reasonable, appropriate, necessary and technologically available safety features and systems such as those described herein so as not to subject others to foreseeable harm and injury;

[ECF No. 46, 19, emphasis added].

Rush challenges the claims against it in the Amended Complaint because it is not the designer or the manufacturer of the truck. Plaintiffs' claims amount to a theory of negligent marketing against Rush. Such a claim fails because it has been affirmatively and definitively rejected in application to product liability cases. Therefore, Rush moves this Court pursuant to Rule 12(b)(6) to dismiss Plaintiffs' Amended Complaint against it, with prejudice.

## III.   **Standard of Review**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v.*

10

*Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). *Twombly* and *Iqbal* shifted federal pleading standards "from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Accordingly,

> [u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some defense or bar to recovery. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Funk v. Stryker Corp.*, 631 F.3d 777, 779, 779–83 (5th Cir. 2011).

## IV.   Legal Argument

### a.   *Rush did not waive any of its arguments stated herein as a result of not filing a motion challenging the original complaint.*

Rush filed an Answer and Affirmative Defenses to Plaintiffs' original Complaint. The only additions to Plaintiffs' Amended Complaint are claims against Sealand Food.  It is anticipated that Plaintiffs will procedurally challenge Rush's challenge to the Amended Complaint. However, Rush did not waive any challenge to the claims asserted in the Amended Complaint for not filing a motion pursuant to Rule 12(b) after the original Complaint.  Rule 12(g)(2), known as the

"consolidation rule," imposes the following restrictions on filing successive motions to dismiss under Rule 12(b)(6): "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). A Rule 12(b)(6) motion to dismiss does not fall within the Rule 12(h)(2) or (3) exceptions. *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320–21 (3d Cir. 2015). Rule 12(g)(2) "is intended 'to eliminate unnecessary delay at the pleading stage' by encouraging 'the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in a piecemeal fashion.' " *Roma Concrete Corp. v. Pension Associates*, 2019 WL 3683561 (E.D. Pa. 2019), *quoting Leyse, supra*, at 320 (citations omitted). This "procedural bar ... covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted." *Leyse, supra*, at 321-22 (holding that the district court erred in considering the defendant's successive motion to dismiss because the defendant could have easily included its statutory standing argument in the original motion, which raised a collateral estoppel challenge). The Third Circuit in *Leyse* reasoned that "[a] district court's decision to consider a successive Rule 12(b)(6) motion to dismiss is usually harmless, even if it technically violates Rule 12(g)(2)." *Id.* at 321.

Regardless, this current Motion is not a successive motion that would violate the "consolidation Rule" under Rule 12(g)(2).  Before *Leyse, supra*, the Courts in this District applied the "consolidation rule" inconsistently. However, the Third Circuit resolved all ambiguity and is controlling in this instance, although does not need to be.  This is not an instance where Rush filed a motion under Rule 12(b) to the original Complaint. Quite to the contrary, this is not the type of procedural situation that implicates the concerns under Rule 12(g)(2).

12

### b. There is no legally cognizable cause of action against Rush for strict liability.

In a strict liability claim alleging design defect, a plaintiff must show: (1) the product was defective; (2) the defect proximately caused the plaintiff's injury; and (3) the defect existed at the time the product left the defendant's control. *Tincher v. Omega Flex, Inc.,* 104 A.3d 328, 335 (Pa. 2014). In 1966 the Supreme Court of Pennsylvania adopted Section 402A of the Restatement (Second) to evaluate whether a product was defective. Section 402A provides in relevant part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A(1); *see Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966) (adopting Section 402A). "[T]he critical inquiry in affixing liability is whether a product is 'defective'; in the context of a strict liability claim, whether a product is defective depends upon whether that product is 'unreasonably dangerous'." *See Tincher, supra*. A plaintiff may prove the product is "defective" by showing that either: (1) "the danger is unknowable and unacceptable to the average or ordinary consumer" (the "consumer expectations standard"); or (2) "a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions" (the "risk-utility standard"). *Id.* at 385–91 (citations omitted). A plaintiff may proceed under either theory, but only needs to prevail on one to demonstrate the existence of a defect. *Id.* at 391. The Supreme Court further stated that a court may only "remove" the issue from the jury, "for example, via adjudication of a dispositive

motion...where it is clear that reasonable minds [cannot] differ on the issue." *Id.* at 407 (citation and internal quotation marks omitted).

Attempting to not disregard the strict liability principles set forth in *Tincher, supra*, Plaintiffs have worded their allegations under the guise of a claim for strict liability, but the legal theories as read in the light most favorable to the Plaintiffs are claims that Rush **failed to market** this truck to Express Light.  Under the law, there is no cause of action against a seller, or lessor here, of a product for failure to market. *See Salvio v. Amgen, Inc.*, 810 F.Supp.2d 745 (W.D. Pa. 2011). While such a theory of liability has been recognized by the Pennsylvania Supreme Court against drug manufacturers (*see Lance v. Wyeth*, 85 A.3d 434, 458 (Pa. 2014)), it has been narrowly limited to only the pharmaceutical application. In *Wolfe v. McNeil-PPC, Inc.*, the Eastern District correctly professed that Pennsylvania courts only recognize "one narrow exception to this broad prohibition on negligent marketing claims for circumstances in which a drug is promoted in such a way as to negate otherwise-adequate warnings." 773 F.Supp.2d 561, 570-71 (E.D. Pa. 2011).

In *Morello v. Kenco Toyota Lift, et al.*, the undisputed facts can be summarized as follows: Toyota Industrial Equipment Manufacturing manufactured a forklift sold by Kenco (seller) to Jet Plastica. 142 F.Supp.3d 378 (E.D. Pa. 2015). Much like Express Light in the instant case, Jet Plastica did not purchase optional safety accessories such as rear view mirrors, backup alarms, and rear strobe lights automatically operational when operating in reverse. Plaintiff Morello worked for Jet Plastica and was injured when the forklift, operated by a co-worker, struck him. *Id*. at 381. Morello alleged under a theory of negligence that Kenco "failed to comply with industry standards and practices to communicate and educate Jet Plastica of the necessary safety items which were required to make the forklifts safe at Jet Plastica" and for "failing to communicate the pros and cons of having the required safety items." *Id*. at 383, quoting Morello's expert opinions on industry

standards. Morello claimed that Kenco's salesman **had a duty to educate customers with respect to safety features and discussing with customers the different safety features offered by Toyota**, the same circumstances in this case. *Id.* (emphasis added).

The Court considered the facts in *Morella*, the same circumstances alleged in the instant case, and granted Kenco's motion for summary judgment. *Id.* at 384. The Court correctly held that (1) a "sales technique does not create a legally cognizable duty as a matter of law;" (2) there is no duty to "educate and inform" a buyer regarding safety accessories, which would "turn salespeople into quasi-fiduciaries;" and (3) salespeople cannot simultaneously act as consultants to buyers and agents of sellers. *Id.* at 384-85.

Here, Plaintiffs cloak a "negligent marketing" theory under the guise of a strict liability claim. Time and again, the Courts of this Commonwealth have declined to extend such duties to sellers of products outside of the pharmaceutical and medical device arena. However, that is precisely what Plaintiffs attempt to hold Rush liable for in this case. Rush has no duty to educate and inform its customers of safety options. Rush did not design this truck and did not manufacture this truck. To allow Plaintiffs' claims of strict liability to proceed would contradict the law of this Commonwealth.

To the extent Plaintiffs' allegation that Rush failed to "equip" the truck with safety components may be interpreted as a claim for failure to retrofit, the law is clear that a failure to recall or retrofit a product after its sale could not be the basis for a products liability claim under Pennsylvania law. *See Talarico v. Skyjack, Inc.*, 191 F. Supp. 3d 394 (M.D. Pa. 2016), citing *Lynch v. McStome & Lincoln Plaza Associates*, 548 A.2d 1276, 1281 (Pa. Super. 1988).

### c. *Plaintiffs' claims of negligence must be dismissed against Rush.*

"Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of *a legally recognized duty or obligation of the defendant* that is causally connected to actual damages suffered by the plaintiff." *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 596 (Pa. 2012) (citation omitted) (emphasis added); *see also Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) ("The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff.") A duty may arise from common law, statute, or contract. *See DeJesus v. US. Dept. of Veterans Affairs*, 479 F.3d 271, 280–81 (3d Cir. 2007) (citation omitted) ("In all tort cases, a duty may be imposed either through common-law case development or through statute.")

Plaintiffs' claims in Count Two for product negligence simply regurgitate their strict liability theories for a claim of "negligent marketing." The rationale set forth previously herein applies to such a claim, which is clearly prohibited as a matter of law.

For all of the reasons stated herein, Rush is entitled to a dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6).

### V.   <u>Conclusion</u>

Rush seeks dismissal as a matter of law of all claims in Plaintiffs' Amended Complaint. It is alleged that Rush is a lessor of the truck, and did not design, manufacture, or assemble the truck. The only theory of liability that the Plaintiffs can plead as to Rush is one of "negligent marketing." Such a theory has been affirmatively declined to apply to sellers of products. With this lawsuit, Plaintiffs seek to create new duties for sellers; duties that have been considered by the Courts of this Commonwealth, analyzed within a "product liability" platform, and duties that the Court have found not to exist as a matter of law.

WHEREFORE, Defendants Rush Truck Centers of Virginia, Inc. and Rush Truck Leasing, Inc. respectfully request this Honorable Court to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6), with prejudice.

Respectfully submitted,

Pietragallo Gordon Alfano Bosick & Raspanti, LLP

By:　/s/ James F. Marrion
P. Brennan Hart, Esquire
PA ID #18123
James F. Marrion, Esquire
PA ID #85181
One Oxford Centre
The Thirty-Eighth Floor
Pittsburgh, PA  15219
(412) 263-2000
***Attorneys for Defendants,***
***RUSH TRUCK CENTERS OF VIRGINIA, INC.***
***and RUSH TRUCK LEASING, INC.***

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS RUSH TRUCK CENTERS OF VIRGINIA, INC. AND RUSH TRUCK LEASING, INC.'S MOTION TO DIMSISS PLAINTIFFS' AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF System, this 2nd day of September, 2019, and the following received notification from the Court:

Gerald J. Hutton, Esquire
Edgar Snyder Law Offices
U.S. Steel Tower – 10th Floor
600 Grant Street
Pittsburgh, PA  15219
ghutton@edgarsnyder.com

Larry E. Coben, Esquire
Anapol Weiss
8700 E. Vista Bonita Drive, Suite 268
Scottsdale, AZ  85255
lcoben@anapolweiss.com
*Counsel for Plaintiffs*

Robert J. Hafner, Esquire
Goldberg Segalla
1700 Market Street, Suite 1418
Philadelphia, PA  19103
rhafner@goldbergsegalla.com
*Counsel for Defendant, Navistar, Inc.*

Kathleen S. McAllister, Esquire
DiBella Geer McAllister Best
20 Stanwix Street – 11th Floor
Pittsburgh, PA  15222
KMcAllister@dgmblaw.com
*Counsel for Defendants,*
*Express Light Trucking, Inc., and Wei Jang*


By:    /s/ James F. Marrion
       James F. Marrion, Esquire

*#4954412*

18