IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PAUL SHIMMEL, *an incapacitated person, by his parent and duly appointed Permanent Plenary guardian of the person and Estate,* BEATRICE SHIMMEL,<br><br>Plaintiffs,<br><br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION *(f/k/a* INTERNATIONAL HARVESTER), *a foreign corporation;* RUSH TRUCK LEASING, INC., *a foreign corporation;* RUSH TRUCK CENTERS OF VIRGINIA, INC., *a foreign corporation;* EXPRESS LIGHT TRUCKING, INC., *a foreign corporation;* WEI JIANG, *a non-resident individual;* and SEALAND FOODS, INC., *a foreign corporation,*<br><br>Defendants. | Case No. 3:18-cv-123<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

I.  **Introduction**

John Paul Shimmel ("John Paul"), a motorcyclist injured in a motor vehicle accident on Pennsylvania State Route 322, and his mother and duly appointed guardian, Beatrice Shimmel (collectively, the "Shimmels"), brought this personal injury action against Defendants Navistar International Corporation ("Navistar"), Rush Truck Leasing, Inc. ("Rush Leasing"), Rush Truck Centers of Virginia, Inc. ("Rush Truck"), Express Light Trucking, Inc. ("Express Light"), Wei Jiang, and Sealand Foods, Inc. ("Sealand"). The Shimmels allege that Defendants are liable in negligence and strict liability for John Paul Shimmel's injuries. Rush Leasing and Rush Truck (collectively, "Rush") moved to dismiss the Complaint, arguing that the Shimmels' strict

-1-

liability and negligence claims are actually negligent failure to market claims, which Pennsylvania law does not recognize. Rush's Motion to Dismiss (ECF No. 50) is fully briefed (ECF Nos. 50, 56, 62) and ripe for disposition.

This Court **DENIES** Rush's Motion and holds that the Shimmels have adequately pleaded claims against Rush.

## II. Jurisdiction and Venue

This Court has jurisdiction because the parties have complete diversity and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Venue is proper because a substantial part of the events giving rise to this action occurred in Clearfield County, which is in the Western District of Pennsylvania. 28 U.S.C. § 1391.

## III. Factual Background

The Court draws all facts from Plaintiffs' Amended Complaint (ECF No. 46) and accepts them as true for the purposes of deciding the Motion.[1]

### A. The Crash on State Route 322

On the afternoon of September 8, 2017, John Paul was riding his motorcycle east on Pennsylvania State Route 322 ("SR 322"). (ECF No. 46 ¶ 10.) At the same time, Jiang was driving a Navistar-manufactured tractor-trailer (the "Truck") in the opposite direction along SR 322 (*Id.* ¶¶ 2, 10.) Another vehicle stopped in front of Jiang on westbound SR 322 and he was unable to stop in time, as the Truck provided him no warning of the stopped vehicle ahead; as a

---

[1] Although the parties have already engaged in extensive discovery and developed a factual record beyond the Amended Complaint, the Court confines itself to solely the facts alleged in the Amended Complaint.

result, the Truck collided with the second vehicle. (*Id.* ¶¶ 10, 11.) As a result of the collision, the Truck entered the eastbound lane where John Paul was riding his motorcycle. (*Id.* ¶ 10.) To avoid colliding with the Truck, John Paul laid down,[2] or "ditched" his motorcycle. (*Id.*) While sliding along the pavement, John Paul ran into a guardrail, causing extensive injuries. (*Id.* ¶¶ 10, 12.)

### B. The Parties

At the time of the collision, Jiang, a Maryland resident, was driving the Truck for his employer, Express. (*Id.* ¶ 5.) Express, a truck hauling business, leased the Truck from Rush, and is incorporated, and has its principal place of business, in Virginia.[3] (*Id.* ¶ 4.) Rush sells and leases trucks like the Truck to trucking companies like Express, and it purchased the Truck from Navistar. (*Id.* ¶ 3.) Rush's principal place of business is in Texas.[4] (*Id.*) Navistar, which manufactured the truck and sold it to Rush, is incorporated in Delaware and has its principal place of business in Illinois. (*Id.* ¶ 2.)

The Shimmels are both citizens of Pennsylvania. (*Id.* ¶1.)

---

[2] Essentially, Shimmel turned the motorcycle sideways and let it fall so that the motorcycle slid along the road with the wheels facing his prior direction of travel.

[3] The Complaint alleges that, in addition to working for Express, Jiang was working for Sealand at the time of the collision. (ECF No. 46 ¶ 6.) Sealand is also incorporated, and has its principal place of business, in Virginia, at the same address as Express. (*Id.* ¶¶ 4, 6.) Express is specifically a trucking business, while Sealand is a wholesale seafood distributor. (*Id.*)

[4] This includes both Rush Leasing and Rush Truck. (ECF No. 46 ¶ 3.) The Complaint does not identify the state of incorporation of either Rush Leasing or Rush Truck; however, records of the Delaware Division of Corporations indicate that both Rush Truck and Rush Leasing are incorporated in Delaware.

### C. The Shimmels' Allegations

In the Complaint, the Shimmels bring three claims: (1) strict liability against Navistar and Rush; (2) product negligence against Navistar and Rush; and (3) negligence against Express, Sealand, and Jiang.[5]

#### 1. The Shimmels' Strict Liability Claims

In their claim that Rush and Navistar are strictly liable for the Truck's defects (Count 1), the Shimmels allege that Rush and Navistar were responsible for designing, manufacturing, marketing, selling, leasing and supplying the Truck. (*Id.* ¶ 15.) Defects in design, manufacture, marketing, sale, lease, and supply caused the accident in, including but not limited to, the following ways: (1) the Truck's design did not include sufficient manner and means to reduce the likelihood of frontal collisions; (2) the Truck lacked necessary safety systems, including collision warning and automatic braking systems to alert the driver and slow the Truck; (3) failing to market the Truck with a forward collision warning system; (4) failing to lease the Truck with a forward collision warning or autonomous braking system; and (5) failing to provide necessary warnings so that purchasers or lessees would be aware of the importance of forward collision warning systems. (*Id.* ¶ 16.)

#### 2. The Shimmels' Product Negligence Claims

The Shimmels' product negligence claims (Count 2) essentially restate their allegations of strict liability but identify the party responsible for each alleged negligent act.[6] The Complaint alleges that Rush acted negligently, including but not limited to, by: (1) deciding not

---

[5] As the Shimmels' third count does not involve Rush, the Court will not address it further.

[6] As only Rush has moved to dismiss, the Court will only recount those allegations which identify Rush as having acted negligently, rather than Navistar.

to purchase an optional collision system offered by Navistar in an effort to cut costs; (2) failing to equip the Truck with safety features; (3) failing to inform Express that comparable trucks had collision avoidance systems; and (4) failing to retrofit the Truck with collision avoidance systems. (*Id.* ¶ 19.)

## IV.   Procedural Background

The Shimmels filed the Complaint on June 11, 2018, seeking relief from Express, Jiang, Navistar, and Rush. (ECF No. 1.) Jiang and Express filed an Answer and Crossclaim against Navistar and Rush on August 9, 2018. (ECF No. 11.) On the same day, Rush filed its own Answer and Crossclaim against Jiang, Express, and Navistar. (ECF No. 12.) Navistar filed its Answer and Crossclaims against Jiang and Express on August 16, 2018. (ECF No. 17.) Rush amended its Crossclaim against Navistar on October 10, 2018. (ECF No. 36.) The parties then began discovery. (*See* ECF No. 40 (amending the scheduling order).)

On August 20, 2019, the Shimmels filed an Amended Complaint, adding Sealand as a defendant, but retaining the substance of the allegations against the other Defendants. (ECF No. 46.) Rush, having answered the Shimmels' original Complaint, moved to dismiss the Amended Complaint. (ECF No. 50.) The Shimmels filed a Response in Opposition and Rush filed a Reply. (ECF Nos. 56, 62.)

## V.   Legal Standard

### A.  Motion to Dismiss

The Court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails "to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.*

The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claims are and the grounds upon which they rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[7] *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[7] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *see id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

### B. Motion for Judgement on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Courts must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Id. (quoting Rosenau, 539 F.3d at 221). The facts presented in the pleadings include those from exhibits attached to the pleadings. See Fed. R. Civ. P. 10(c).

## VI. Discussion

### A. The Court Will Not Deny Rush's Motion on Grounds that It Is Untimely

#### 1. The Parties' Arguments

The Shimmels argue that Rush's Motion is untimely because a party must file motions under Federal Rule of Civil Procedure 12 prior to filing a responsive pleading. (ECF No. 52-1 at 5–6.) Because Rush previously answered the Shimmels' Complaint, which is substantially identical to the Amended Complaint, Rush has waived its right to move to dismiss the case. (*Id.*)

Rush replies that it has not waived its right to move to dismiss because Rules 12(g)(2) and 12(h) provide that the filing of a responsive pleading only waives some Rule 12 defenses, not all. (ECF No. 50 at 11–12.) Rule 12 also bars multiple separate motions under Rule 12 (the

"Consolidation Rule"), and because Rush did not previously file a Rule 12 motion, the Consolidation Rule does not bar Rush from filing the instant motion. (*Id.*)

### 2. Rush's Motion is Timely

Rule 12(b) states that a party must assert each and every defense to a claim in its responsive pleading, but that a party may also present several defenses by motion, including failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b). Rule 12(b) also requires that the party asserting Rule 12 defenses by motion file the motion prior to filing a responsive pleading. *Id.* However, Rule 12 also permits a party to move to dismiss for failure to state a claim by filing a Rule 12(c) motion for judgment on the pleadings. In such circumstances, the court considering the motion applies the same standards as it would on a Rule 12(b)(6) motion to dismiss. *Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

Rule 12 provides that a motion to dismiss for failure to state a claim may be made at any time during the case, including during trial. Fed. R. Civ. P. 12(h)(2). Here, Rush previously filed an Answer (*see* ECF No. 12) but the case has not proceeded through trial and the Motion is therefore timely. The Court will accordingly consider Rush's Motion as a Rule 12(c) motion for judgment on the pleadings.

### B. The Court Will Not Dismiss the Shimmels' Strict Liability Claims Against Rush

#### 1. The Parties' Arguments

Rush argues that the Shimmels' strict liability claims are really a claim for negligent failure to market, a cause of action Pennsylvania law does not recognize for sellers or lessors of trucks. (ECF No. 50 at 14.) Rush concedes that the Pennsylvania Supreme Court has recognized a claim for negligent failure to market but argues that it exists only in very narrow

circumstances related to pharmaceuticals. (*Id.*) A lessor of products, like Rush, has no duty to educate customers with respect to the product's safety features, or to market their products with certain safety features. (*Id.* at 15.) Rush also contends that, to the extent the Shimmels' claims can be construed as such, Pennsylvania law does not recognize a claim for negligent failure to retrofit a product after its sale. (*Id.*)

The Shimmels respond that they are not alleging a failure to market claim and argue that Pennsylvania law permits a plaintiff to hold a lessor strictly liable upon proving that the product was defective. (ECF No. 52-1 at 9.) Pennsylvania law holds all suppliers of products who are engaged in the business of supplying products for public use or consumption are strictly liable for injuries caused by unreasonably dangerous defective conditions in the product. (*Id.*) Because the Truck was unreasonably dangerous by virtue of its defective condition—not having collision avoidance and similar systems—and because Rush is in the business of supplying products for public use, Rush is subject to strict liability. (*Id.*) Finally, the Shimmels contend that they have alleged and will prove that Rush failed to properly retrofit the Truck and that Rush is liable for that failure. (*Id.* at 10–11.)

### 2. The Shimmels Have Adequately Pleaded a Claim of Strict Liability Against Rush

Pennsylvania products liability law follows Section 402A of the Restatement (Second) of Torts ("Section 402A"). *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 400 (Pa. 2014). Pennsylvania law requires that the plaintiff show that: (1) the product was defective; (2) the defect caused the complained-of injury; and (3) the defect existed at the time the product left the defendant's control. *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa. 2009). Pennsylvania law recognizes

three theories of strict liability: (1) design defect; (2) manufacturing defect; and (3) failure to warn. *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995). The Shimmels are proceeding under a design defect theory.

A plaintiff may prove that a product was defective in one of two ways: (1) the danger is unknowable and unacceptable to an average or ordinary consumer; or (2) a reasonable person would conclude that the likelihood and severity of harm the product may cause outweighs the burden of taking precautions. *Tincher*, 104 A.3d at 335. Lessors can be held strictly liable if they lease defective products. *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736, 739–740 (Pa. 1977) ("[A] supplier of chattels is responsible under a theory of strict liability pursuant to Section 402A.").

The Shimmels have adequately pleaded a plausible claim of strict liability against Rush. The Complaint alleges that Rush engages in the business of leasing vehicles like the Truck. (ECF No. 46 ¶ 3.) Accordingly, Rush is subject to strict liability for defects in products it leases that result in unreasonably dangerous defective conditions.

The Shimmels have plausibly alleged that the Truck was defective at the time Rush leased it to Express. The allegations in the Amended Complaint make it plausible that a reasonable person would conclude that the likelihood and severity of the potential harm from the product would outweigh the costs of taking precautions. The Truck lacked a collision avoidance system or an autonomous braking system, both elements that Rush could have installed on the Truck prior to leasing it to Express. (ECF No. 46 ¶ 16.) A reasonable person could plausibly conclude that installing those systems on the Truck was less burdensome than the potential for harm of not installing those systems.

The Shimmels have also plausibly alleged that the defect caused John Paul's injuries: (1) the Truck lacked a collision avoidance system; (2) a collision occurred, sending the Truck into John Paul's lane of travel; (3) John Paul incurred injuries while attempting to avoid colliding with the Truck. (ECF No. 46 ¶¶ 10–12.) If the Truck had possessed collision avoidance systems, it is plausible, based on the Amended Complaint, that Shimmel would not have been injured.

Finally, the Shimmels have plausibly alleged that the defect existed when the Truck left Rush's control. The alleged defect is the lack of a collision avoidance system—among others—and the Amended Complaint states that Jiang received no warning or notice from the Truck before the collision. (ECF No. 46 ¶ 11.)

As the Shimmels have adequately pleaded each element of a claim of strict liability, the Court will not dismiss the claim.

## C. The Court Will Not Dismiss the Shimmels' Product Negligence Claims Against Rush

### 1. The Parties' Arguments

As to the Shimmels' claims of negligence against Rush, Rush asserts that those allegations of negligence are simply repetitions of the Shimmels' strict liability allegations, and therefore fail for the same reasons. (ECF No. 50 at 16.) Additionally, the Shimmels cannot establish a breach of duty by Rush that caused harm to the Shimmels. (*Id.*)

The Shimmels respond that their allegations do state a negligence claim against Rush because commercial suppliers owe a duty to provide their products to the public in a safe, defect-free, condition. (ECF No. 52-1 at 11.) Rush knew of the value of collision avoidance systems, had previously purchased trucks with those systems before marketing the Truck, previously refused to provide Express with trucks that lacked anti-lock braking systems, and

-11-

Rush owned the Truck and leased it to Express without available safety equipment that would have prevented the collision. (*Id.* at 11–12.) Accordingly, Rush is liable for negligence. (*Id.* at 12.)

### 2. The Shimmels Have Pleaded a Case of Negligence Against Rush[8]

In order to prevail in a negligence action, a plaintiff must show that the defendant owed the plaintiff a duty to adhere to a certain standard of conduct, that the defendant breached that duty, that the breach caused the injury, and that the breach caused actual harm to the plaintiff. *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 359 (Pa. Super. Ct. 2015.) Pennsylvania law permits a plaintiff injured by a product that was negligently designed to recover from the manufacturer of that negligently designed product. *Id.* Further, in the products liability context, Pennsylvania law treats lessors and sellers similarly; as a plaintiff may hold a seller, lessor, or manufacturer strictly liable for defective products, it stands to reason that because a plaintiff can hold the manufacturer liable for negligent design, so too can a plaintiff hold a seller or lessor of a product liable. *See Francioni*, 372 A.2d at 739–40.

Although Rush argues that Pennsylvania law does not recognize negligent failure to market claims except in highly limited circumstances—which do not exist in the instant case— the Shimmels' claim for negligence against Rush extends beyond purely a negligent failure to market. *See Lance v. Wyeth*, 85 A.3d 4343, 458–60 (Pa. 2014) (discussing negligent failure to market claims). The Shimmels specifically allege that Rush was negligent in leasing the Truck to Express by: (1) deciding not to purchase necessary collision avoidance systems; (2) failing to

---

[8] Although Rush argues that the Shimmels' claims are a claim for negligent failure to market, a claim which Pennsylvania law does not recognize, the Court also considers Rush's Motion to be a general attack, arguing that under no circumstances could Rush be found liable for negligence to the Shimmels.

equip the Truck with reasonable safeguards; (3) failing to retrofit the Truck with safety systems; and (4) failing to inform Express of the availability of comparable trucks with collision avoidance systems. (ECF No. 46 ¶ 19.) Of these allegations, only (4) relates to Rush's conduct in marketing the Truck. Even assuming negligent failure to market is not a cognizable claim in this instance, the Shimmels' other allegations can support a claim of negligence against Rush.

Rush cites *Morello v. Kenco Toyota Lift* in support of its argument that it had no duty to equip the Truck with safety equipment. *See* 142 F. Supp. 3d 378 (E.D. Pa. 2015). In *Morello*, the court concluded that a seller did not owe a duty to a forklift operator to "educate and inform" the buyer about potential safety features. *Id.* at 382–84. Here, the Shimmels allege more than Rush's failure to educate and inform Express about available safety features on the Truck; rather, they allege that Rush acted negligently in failing to equip the Truck with collision avoidance systems. (ECF No. 46 ¶ 19.) Accordingly, the Shimmels have adequately pleaded a case of negligence against Rush.

### VII. Conclusion

For the foregoing reasons, the Court denies Rush's Motion to Dismiss.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PAUL SHIMMEL, *an incapacitated person, by his parent and duly appointed Permanent Plenary guardian of the person and Estate*, BEATRICE SHIMMEL,<br><br>               **Plaintiffs,**<br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION (*f/k/a* INTERNATIONAL HARVESTER), *a foreign corporation;* RUSH TRUCK LEASING, INC., *a foreign corporation;* RUSH TRUCK CENTERS OF VIRGINIA, INC., *a foreign corporation;* EXPRESS LIGHT TRUCKING, INC., *a foreign corporation;* WEI JIANG, *a non-resident individual;* and SEALAND FOODS, INC., *a foreign corporation,*<br><br>               **Defendants.** | CASE NO. 3:18-cv-123<br><br>JUDGE KIM R. GIBSON |

## ORDER

AND NOW, this 24th day of February, 2020, upon consideration of Defendants Rush Truck Leasing, Inc. and Rush Enterprises, Inc.'s Motion to Dismiss (ECF No. 50), **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

*/s/ Kim R. Gibson*
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE